FILED

2010 Jun-21  PM 12:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| WALTER C. DUNCAN, DICE K. LINEBERRY, FRANCIS H. KOHN, DOROTHY L. LONG, JAMES L. HUBBARD, KATY HUBBARD HALL, and MEREDITH HUBBARD, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | NO.:_____ |
| v. | ) ) | JURY DEMAND |
| MORGAN KEEGAN & CO., INC., MK HOLDING, INC., CARTER E. ANTHONY, ALLEN B. MORGAN, JR., JOSEPH C. WELLER, JAMES STILLMAN R. MCFADDEN, ARCHIE W. WILLIS, III, MARY S. STONE, W. RANDALL PITTMAN, J. KENNETH ALDERMAN, J. THOMPSON WELLER, CHARLES D. MAXWELL, DAVID H. TANNEHILL, WILLIAM JEFFRIES MANN, JAMES D. WITHERINGTON, JR., R. PATRICK KRUCZEK, JACK R. BLAIR, ALBERT C. JOHNSON, MICHELE F. WOOD, BRIAN B. SULLIVAN, RMK ADVANTAGE INCOME FUND, INC., RMK HIGH INCOME FUND, INC., RMK STRATEGIC INCOME FUND, INC., MORGAN KEEGAN SELECT FUND, INC., and RMK MULTI-SECTOR HIGH INCOME FUND, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

---

## COMPLAINT

---

## INTRODUCTION

1.      Plaintiffs bring this action to recover losses they sustained from investments in one or more of the following mutual funds:

- RMK Advantage Income Fund;

- RMK Strategic Income Fund;

- RMK High Income Fund;

- RMK Select High Income Fund;

- RMK Select Intermediate Fund;

- RMK Select Short Term Bond Fund; and

- RMK Multi-Sector High Income Fund

(collectively, "the Funds"). Plaintiffs bring this action against the Funds' broker dealer who sold the Funds, its investment advisor, their officers and directors, and other affiliated Defendants for violations of the federal securities laws, the Alabama Securities Act, and Alabama common law.

2.      Plaintiffs, acting through their undersigned attorneys, bring this action based on their personal knowledge as to their own investments and based on the investigation conducted by their counsel as to all other matters, which included, without limitation, analysis of publicly available news articles and reports, public filings with the Securities and Exchange Commission ("SEC"), review of various web sites and internet information sources (including the Morgan Keegan Funds website), news reports, press releases and other matters of public record, prospectuses, Statements of Additional Information, annual and semi-annual reports issued by and on behalf of the Funds, sales materials, and upon information and belief.

3.     As set forth more fully below, the prospectuses and registration statements pursuant to which the Funds were sold to the Plaintiffs contained material misrepresentations and/or failed to disclose numerous material facts, including the following:

(a)     The nature and extent of the risk associated with the securities in which the assets of the Funds were concentrated;

(b)     The extent to which the Funds were invested in illiquid securities of uncertain and potentially volatile value - investments which in the event of a forced sale would quite likely bring far less than the prices at which they were valued by the Funds;

(c)     The Funds were investing heavily in complex new investment structures as to which data was very difficult to obtain, the risk and fair value of which were extremely difficult to assess, and which had never been tested in a down market cycle;

(d)     The substantial illiquidity of the Funds meant that if it became necessary for the Funds to sell assets, the manager would likely have to sell first the few lower-risk, liquid assets held by the Funds, thus penalizing those who remained in the Funds;

(e)     The Funds were investing the majority of their assets in subprime, illiquid, and/or untested investment structures (which ultimately resulted in each of the Funds losing vastly more in the year 2007 than any other funds in their fund categories);

(f)     The Funds were investing heavily in assets that could not be valued based on readily available market quotations and were therefore being subjectively valued under "fair valuation" procedures;

(g)     The Funds' Boards of Directors were not discharging their legal responsibilities with respect to "fair valuation" of the Funds' assets and had abdicated those responsibilities to the

Funds' investment advisor, which had an inherent and undisclosed conflict of interest because its compensation was based on the amount at which the Funds' assets were valued;

      (h)    The Funds were sold to the Plaintiffs as funds committed to "value-oriented" investing, when in truth they did not employ "value-investing" strategies to a significant extent;

      (i)    The Funds were marketed as different funds employing different investment strategies, but in fact were managed by the same portfolio managers, and all utilized highly similar strategies and bought many of the same or similar investments, which created an enhanced risk for each of the Funds in the event that the assets lost value and/or it became necessary to sell such investments;

      (j)    The Funds were investing heavily in assets backed by non-conforming mortgages that did not comply with FNMA and FHLMC standards and were much riskier than conforming mortgages; and

      (k)    That the Funds' performance results prior to 2006 were attributable to the Funds' excessive concentration in subprime, illiquid, and/or untested investment structures.

<strong><u>JURISDICTION AND VENUE</u></strong>

      4.    This Court has subject matter jurisdiction over Plaintiffs' Securities Act claims pursuant to 15 U.S.C. § 77v and 28 U.S.C. § 1331. This Court has supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

      5.    Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

6.     Venue is also proper under 15 U.S.C. §77v because the Defendants transact business in this district and because the securities in question in this case were offered and sold to the Plaintiffs in this district.

## PARTIES

7.     Plaintiffs are residents of the State of Alabama.

8.     Defendant RMK High Income Fund, Inc. is a closed-end management investment company that invests primarily in debt securities.

9.     Defendant RMK Advantage Income Fund, Inc. is a closed-end management investment company that invests primarily in debt securities.

10.     Defendant RMK Strategic Income Fund, Inc. is a closed-end management investment company that invests primarily in debt securities.

11.     Defendant Morgan Keegan Select Fund, Inc. ("MK Select") is an open-ended management investment company. It consists of three portfolios which invest in fixed income securities, each with its own investment objectives. Each of these portfolios offers three classes of shares: Class A shares, Class C shares and Class I shares. The portfolios are as follows:

(a)     High Income Fund – This fund was initially an open-ended fund but was subsequently closed to new investors as of November 1, 2005. This fund seeks a high level of income by investing in below investment grade bonds (commonly referred to as "junk bonds"); capital growth is a secondary consideration. It invests primarily in junk bonds. The types of securities the High Income Fund may purchase include corporate bonds, mortgage-backed and asset backed securities and other structured finance vehicles, convertible debt securities, U.S. government securities and municipal and foreign government obligations. The fund may invest up to 15% of its total assets in foreign debt and foreign equity securities and up to 25% of its

total assets in domestic equity securities, including common and preferred stocks. Such securities may include common stocks of real estate investment trusts and utilities. The average effective maturity of the fund's portfolio will generally be between three and fifteen years.

(b)     Intermediate Fund – This is an open-ended fund. This fund seeks a high level of income by investing in intermediate maturity, investment grade bonds; capital growth is a secondary consideration. It invests primarily in investment grade bonds. The type of securities that the Intermediate Fund may purchase include U.S. government securities, corporate bonds, debentures, notes, preferred stock, mortgage-backed and other asset-backed securities. The fund may also invest up to 35% of its assets in below investment grade bonds, convertible securities and common stocks. The average effective maturity of the fund's portfolio will generally be between three and ten years.

(c)     Short Term Fund – This is an open-ended fund. This fund seeks a high level of current income consistent with preservation of capital. It invests primarily in investment grade bonds. The types of securities that the Short Term Fund may purchase include bonds of U.S. corporate and governmental issuers, U.S. dollar-denominated bonds of foreign issuers, mortgage-backed and other asset-backed securities, and preferred stock. The fund may also invest in collateralized mortgage obligations, repurchase agreements, adjustable rate securities and payable-in-kind bonds. The average effective maturity of the fund's portfolio will generally be three years or less.

12.     Defendant RMK Multi-Sector High Income Fund ("the RHY Fund") is a closed-ended fund. This fund operates as a diversified, closed-end investment company seeking a high level of current income with capital appreciation as a secondary investment objective. The RHY Fund invests in a wide range of debt securities, including corporate bonds, mortgage-backed and

6

asset-backed securities, convertible debt securities, distressed securities, including securities of companies in bankruptcy reorganization proceedings or otherwise in the process of debt restructuring, U.S. government and municipal obligations and foreign government obligations. It invests up to 30% of its total assets in equity securities of both domestic and foreign issuers and up to 15% of its total assets in a combination of foreign debt and foreign equity securities.

13.     Defendant Morgan Keegan & Company, Inc. ("Morgan Keegan"), a wholly-owned subsidiary of Regions, is a full-service broker/dealer that purports to provide personalized investment services to its clients from over 400 offices in 19 states, and is headquartered in Memphis, Tennessee. Morgan Keegan acted as underwriter and distribution agent with respect to the Funds' shares that were sold. Morgan Keegan sold and received commissions on the sale of shares of the Funds. Morgan Keegan also provided an employee to serve as the Funds' Chief Compliance Officer and, pursuant to a Fund Accounting Service Agreement, provided portfolio accounting services to the Funds for an annual fee based on the average daily net assets of the Funds. Morgan Keegan also served as the Transfer and Dividend Disbursing Agent for the Funds. Pursuant to the Transfer Agency and Service Agreement, each Fund pays Morgan Keegan an annual base fee per share class.

14.     Defendant MK Holding, Inc. ("Holding"), is a wholly-owned subsidiary of Regions and is the parent company of Morgan Management.

15.     Defendant Allen B. Morgan, Jr. ("Morgan"), was, at all relative times, a director of one or more of the Funds. He also served as a Director and Vice-Chairman of Regions and as a Director of Morgan Management, and Chairman and Executive Managing Director of Morgan Keegan. Defendant Morgan signed one or more of the Funds' registration statements,

prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs trace their purchases in the Funds.

16.     Defendant Carter E. Anthony ("Anthony") was, at all relevant times, a director and officer of one or more of the Funds. Additionally, Anthony was President and Chief Investment Officer of Morgan Management. Defendant Anthony signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

17.     Defendant Joseph C. Weller ("Weller") co-founded Morgan Keegan. Weller was Vice Chairman of Morgan Keegan and Treasurer of the Funds until November 2006. Weller also served as Chief Financial Officer ("CFO") of Morgan Keegan and was, at all relevant times, an officer of one or more of the Funds. Defendant Joseph Weller signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

18.     Defendant James Stillman R. McFadden ("McFadden") was, at all relevant times, a director of one or more of the Funds. Defendant McFadden signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

19.     Defendant Archie W. Willis, III ("Willis") was, at all relevant times, a director of one or more of the Funds. Defendant Willis signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

20.     Defendant Mary S. Stone ("Stone") was, at all relevant times, a director of one or more of the Funds. Defendant Stone signed one or more of the Funds' registration statements,

prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

21.     Defendant W. Randall Pittman ("Pittman") was, at all relevant times, a director of one or more of the Funds. Defendant Pittman signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

22.     Defendant J. Kenneth Alderman ("Alderman") was, at all relevant times, a director of one or more of the Funds. Mr. Alderman has been CEO of Morgan Management since 2002. Defendant Alderman signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

23.     Defendant J. Thompson Weller ("J. Weller") is, and at all relevant times was, Managing Director and Controller of Morgan Keegan. Defendant J. Weller signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

24.     Defendant Brian B. Sullivan ("Sullivan") has served as President and Chief Investment Officer of Morgan Management since 2006.

25.     Defendant Charles D. Maxwell ("Maxwell") has served as Executive Managing Director, CFO, Treasurer and Secretary of Morgan Keegan. Defendant Maxwell signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

26.     Defendant David H. Tannehill ("Tannehill") is and was at all relevant times the Portfolio Manager of the Funds and of Morgan Management.

27.     Defendant Michele F. Wood ("Wood") is, and at all relevant times was, Chief Compliance Officer of Morgan Management and Senior Vice President of Morgan Management.

28.     Defendant Jack R. Blair ("Blair") was, at all relevant times, a director of one or more of the Funds. Defendant Blair signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

29.     Defendant Albert C. Johnson ("Johnson") was, at all relevant times, a director of one or more of the Funds. Defendant Johnson signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

30.     Defendant William Jeffries Mann ("Mann") was, at all relevant times, a director of one or more of the Funds. Defendant Mann signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during period with respect to which Plaintiffs can trace their purchases in the Funds.

31.     Defendant James D. Witherington, Jr. ("Witherington") was, at all relevant times, a director of one or more of the Funds. Defendant Witherington signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

32.     Defendant R. Patrick Kruczek ("Kruezek") was, at all relevant times, a director of one or more of the Funds. Defendant Kruczek signed one or more of the Funds' registration statements, prospectuses, and/or amendments thereto effective during the period with respect to which Plaintiffs can trace their purchases in the Funds.

33.     The defendants referred to in ¶¶ 15-32 above are referred to herein as the "Individual Defendants."

34.     Defendants either participated, directly or indirectly, in the wrongful conduct alleged herein; combined to engage in the wrongful transactions and dealings alleged herein; knew, or in the exercise of reasonable care, should have known, of the misrepresentations and omissions of material facts, or recklessly caused such misrepresentations or omissions of material facts to be made; or benefited from the wrongful conduct alleged.

## STATEMENT OF FACTS
### The Funds' Catastrophic Crash

35.     In the year 2007, the Funds at issue in this case experienced a meltdown of unprecedented proportions.

36.     These enormous losses were not caused primarily by an economic downturn, the subprime crisis, or other economic factors. This assertion is easily confirmed by the performance of the investment indices by which the Funds measured themselves and by the performance of other funds in the high income and intermediate bond categories. For 2007, the Lehman Brothers U.S. High Yield Index was up 1.87%.

37.     Similarly, the performance of other high income funds in 2007 was dramatically different from the catastrophic performance of the Funds at issue in this case. The RMK funds were by far the worst performing funds of the high-yield closed-end funds tracked by Morningstar for the year 2007.

38.     The astonishing meltdown of the Funds was caused by their extreme overconcentration in securities that were very high-risk and illiquid, by the Funds' failure to value their assets at reasonable fair value prior to the third quarter of 2007, and by the failure of the Funds to disclose properly all material risks and the true facts.

39.     As more particularly alleged herein, the substantial majority of the Funds' assets were invested in (i) new and complex structured investments that had never been tested in a down-market cycle, the risk of which could not be reasonably evaluated, and the value of which could not be fairly ascertained, and (ii) collateralized investments backed by subprime or other low quality mortgages that did not conform to FNMA and FHLMC standards and were much riskier than conforming mortgages.

40.     Under federal law, the fair value of securities as to which market quotations are not readily available must be determined in good faith by the board of directors of an investment company. Under SEC rulings, "fair value" must be based on what a fund could reasonably expect to obtain for the securities upon their "current sale."

41.     Prior to the third quarter of 2007, the Funds' reported valuations of their assets which improperly assumed that highly illiquid assets could be liquidated on a current basis at the values paid by the Funds and/or did not reasonably discount asset value based on illiquidity issues. These actions were reckless, violated SEC directives, and were not disclosed to investors.

42.     Although subprime concerns and other economic events in 2007 had some effect on the Funds, the magnitude of the Funds' losses was completely outside the range of the losses, if any, experienced by other high income and intermediate income funds.

43.     The disproportionate, adverse effect of economic events on the Funds could not reasonably have been foreseen or anticipated by persons investing in the Funds, in view of the Funds' misleading disclosures and their failure to disclose the extent to which the securities held in their portfolios were vulnerable to market events and the risks inherent in such holdings. The disproportionate effect of economic events on the Funds, however, could and should reasonably have been foreseen and anticipated by defendants, given the magnitude of illiquid securities in

the Funds' portfolios, defendants' knowledge of the speculative nature of the pricing of assets in the Funds, and prior events that have affected niches of the fixed-income securities markets.

44.    The investment strategies employed by the Funds were far more risky than disclosed. For example, no other intermediate term or high-yield bond fund invested as heavily in recently developed, structured financial instruments as did the Funds in this case. On July 19, 2007, Bloomberg News quoted James Kelsoe, senior portfolio manager of the Funds, as having an "intoxication" with such securities. Bloomberg further reported that an analyst at Morningstar, Inc., the mutual fund research firm, noted that "[a] lot of mutual funds didn't own much of this stuff" and that Kelsoe was "the one real big exception."

45.    The great majority of the Funds' collapse occurred after the Defendants' made the following public disclosures concerning problems with the Funds:

- At a shareholders meeting on July 13, 2007, Kelsoe disclosed that their subprime and collateralized debt holdings were under pressure and experiencing substantial volatility.

- On August 10, 2007, Kelsoe disclosed in a letter to shareholders increasing volatility and negative price movement in the Funds' assets and "unprecedented" problems,

- In mid-August, 2007, the Funds made several SEC filings disclosing asset liquidity problems and difficulties in obtaining realistic values for some of the Funds' securities. These SEC filings also stated that the Funds were unable to file certified shareholder reports on a timely basis and had retained a valuation consultant to assist in determining the fair value of the Funds' securities.

- On October 4, 2007, Morgan Keegan Select Fund, Inc., another high income fund managed by Defendants, which contained very similar holdings, filed its annual report with the SEC.

- The following day, the Wall Street Journal reported that the Regions Morgan Keegan Select High Income and Intermediate Funds (funds managed similarly to the Funds in this case) had had to value 60% and 50% of their assets, respectively, at fair value since market values were not readily available. In connection with that article, Kelsoe told the Journal that "What was an ocean of liquidity has quickly become a desert."

- On November 7, 2007, Kelsoe sent a letter to investors in which he stated that "we have always invested a large portion of our portfolios in 'structured finance' fixed income securities .... and the weakness in the portfolios relates to this area of investment."

46.     Thus, the extraordinary decline in the Funds' asset values and share prices was caused by actions and omissions of the Defendants and their failure to make timely and accurate disclosures to the Plaintiffs.

## Misrepresentations And Omissions In The Funds' SEC Filings

47.     Each of the prospectuses and registration statements pursuant to which the Funds were sold to Plaintiffs contained material misrepresentations and/or failed to disclose numerous material facts, including the following:

(a)     The nature and extent of the uniquely risky securities in which these Funds were investing;

(b)     The extent to which these Funds were invested in illiquid securities of uncertain and potentially volatile value - investments which in the event of a forced sale would quite likely bring far less than the prices at which they were valued by these funds;

(c)     These funds were heavily investing in complex new investment structures as to which data were very difficult to obtain, the risk and fair value of which were extremely difficult to assess, and which had never been tested in a down-market cycle;

(d)     The substantial illiquidity of these Funds meant that if it became necessary to sell assets, the manager would likely have to sell first the few lower-risk, liquid assets held by these Funds, thus penalizing those who remained in these Funds;

14

(e)     These Funds were investing heavily, and to an extent unique in the income fund industry, in subprime, illiquid, and/or untested investment structures more than any other funds in their fund categories;

(f)     These Funds were investing heavily in assets that could not be valued based on readily available market quotations and were therefore being subjectively valued under "fair valuation" procedures;

(g)     These Funds were marketed as different funds employing different investment strategies, but in fact the same portfolio manager managed six Funds that all utilized highly similar strategies and bought many of the same or similar investments, which created an enhanced risk for each Fund in the event that the assets lost value and/or it became necessary to sell such investments;

(h)     These Funds invested heavily in assets backed by non-conforming mortgages that did not comply with FNMA and FHLMC standards and were much riskier than conforming mortgages; and

(i)     The Funds lacked adequate procedures and controls to prevent the portfolio manager from investing excessively in illiquid securities.

48.     In addition, the Funds were presented to the investing public as three different funds that employed different investment strategies. In truth, however, they were managed almost identically, with highly similar asset allocations and individual securities holdings. This reality was not disclosed in the registration statements and prospectuses filed by the Funds.

49.     Because of their highly correlated portfolios, investors who purchased more than one of the Funds, assuming that they were thereby diversifying and reducing overall risk, were in fact not doing so.

50.     Also, the registration statements and prospectuses filed by the Funds represented that they would invest in a wide range of securities, which would contribute to a more stable net asset value, would not invest more than 25% of their total assets in the securities of companies in the same industry, and would pursue a value-investing strategy. In fact, however, the investments of the Funds in securities tied to the mortgage industry exceeded 25%. This fact was never disclosed in the Funds' SEC filings.

51.     The Funds' registration statements and prospectuses also failed to disclose that their Boards of Directors were not discharging their legal responsibilities with respect to "fair valuation" of the Funds' assets and that "fair valuation" decisions were being made by the Funds' investment advisor, which had an inherent and undisclosed conflict of interest because its compensation was based on the amount at which the Funds' assets were valued.

52.     Also, the Funds were sold to the public as funds committed to value-oriented investing, when in truth they did not employ value-investing strategies.

53.     The statute of limitations applicable to Plaintiffs' claims have been tolled pursuant to (i) the filing of numerous class actions asserting common questions of law and fact; (ii) Ala.Code § 6-2-3; (iii) Ala.Code § 8-16-19 (e); and (iv) other provisions of federal and state law and equitable principles.

## LEGAL CLAIMS

### COUNT I
### Violation of Section 11 of the Securities Act

54.     Plaintiffs incorporate ¶¶ 1-53 by reference.

55.     This Count is brought pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of Plaintiffs against all Defendants.

56.     The registration statements by which the Funds were offered to Plaintiffs, or to those investors from whom Plaintiffs acquired their shares, were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

57.     Defendant RMK High Income Fund, Inc. is issuer and registrant of its fund.

58.     Defendant RMK Advantage Income Fund, Inc. is issuer and registrant of its fund.

59.     Defendant RMK Strategic Income Fund, Inc. is issuer and registrant of its fund.

60.     As issuer of the shares, MK Select and the RHY Fund are strictly liable to Plaintiffs for the misstatements and omissions.

61.     As issuers of their fund's shares, RMK High Income Fund, Inc., RMK Advantage Income Fund, Inc., RMK Strategic Income Fund, Inc., MK Select Fund, Inc., and RMK Multi-Sector High Income Fund are liable for the above-referenced misrepresentations and omissions.

62.     The other Defendants were persons who signed the Funds' registration statements, were directors or persons performing similar functions for the issuers, were underwriters of the Funds, or were accountants who consented to being named in the registration statements as having prepared or certified the Funds' financial statements.

63.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds to believe that the statements contained in the Funds' registration statements were true and without omissions of material facts and not misleading. Defendants could have, with the exercise of reasonable care, become aware of the misleading nature of the registration statements.

64.     Through the conduct alleged above, each Defendant violated, is liable under, or controlled a party who is liable under §11 of the Securities Act.

65.     Plaintiffs acquired shares of the Funds and when Defendants' misleading registration statements were in effect. The shares purchased by Plaintiffs were bought pursuant to Defendants' registration statements or are traceable to such registration statements.

66.     Plaintiffs have been damaged and are entitled to all relief from Defendants permitted by § 11 of the Securities Act.

67.     At the times Plaintiffs purchased their Funds shares, they did not know and could not reasonably have known of the misleading statements, omissions, and misconduct set forth above.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.     Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.     Award to Plaintiffs reasonable attorney's fees;

3.     Award Plaintiffs a trial by jury, compensatory damages; and

4.     Provide such further legal or equitable relief as the Court deems to be just.

**COUNT II**
**Violation of Section 12 of the Securities Act**

68.     Plaintiffs incorporate ¶¶ 1-67 by reference.

69.     This Count is brought pursuant to § 12a(2) of the Securities Act, 15 U.S.C. § 771, on behalf of Plaintiffs against all Defendants.

70.     Defendants were sellers, offerors, and/or solicitors with respect to the investments in the Funds made by Plaintiffs.

71.     The Individual Defendants participated in the preparation of the prospectuses filed with respect to the Funds.

72.     The prospectuses by which the Funds were offered to Plaintiffs were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

73.     Defendants could have, with the exercise of reasonable care, become aware of the misleading nature of the Funds' prospectuses.

74.     Through the conduct alleged above, each Defendant violated, is liable under, or controlled a party who is liable under § 12a(2) of the Securities Act.

75.     Plaintiffs acquired shares of the Funds from the issuers when Defendants' misleading prospectuses were in effect.

76.     Plaintiffs have been damaged and are entitled to all relief from Defendants permitted by § 12a(2) of the Securities Act. Those Plaintiffs who still own their shares of the Funds hereby tender their shares to Defendants.

77.     At the times Plaintiffs purchased their Funds shares, they did not know and could not reasonably have known of the misleading statements, omissions, and misconduct set forth above.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.      Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.      Award to Plaintiffs reasonable attorney's fees;

3.      Award Plaintiffs a trial by jury, compensatory damages; and

4.      Provide such further legal or equitable relief as the Court deems to be just.

**COUNT III**
**Violation Of Section 15 of the Securities Act**

78.     Plaintiffs incorporate ¶¶ 1-77 by reference.

79.     This Count is brought pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of Plaintiffs and against all Defendants other than the fund company issuers ("the non-issuer Defendants").

80.     The non-issuer Defendants were control persons of the Funds by virtue of their positions as directors or senior officers of the Funds and/or by virtue of their relationships with the Funds. These Defendants exercised control over the general affairs of the Funds and had the power to control the conduct giving rise to Plaintiffs' claims.

81.     The non-issuer Defendants are therefore liable for Securities Act violations alleged in Counts One and Two above.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.      Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.      Award to Plaintiffs reasonable attorney's fees;

3.      Award Plaintiffs a trial by jury, compensatory damages; and

4.      Provide such further legal or equitable relief as the Court deems to be just.

**COUNT IV**
**Misrepresentation and Suppression/Fraudulent**
**Concealment as to Pricing and Valuation**

82.     Plaintiffs incorporate ¶¶ 1-81 by reference.

83.     Defendants are guilty of numerous misrepresentations and omissions of material facts set forth above and summarized below, including without limitation the Defendants' failure to disclose that the Funds were fraudulently priced as a result of there being no market for a large percentage of the lower-tranche asset-based securities. This led the Defendants to create false valuations relying on fictitious, non-arm's length "verifications" performed internally and not based on any actual market. The fraudulent pricing of these securities caused Plaintiffs to buy and sell holdings in RMK Funds based on values which never existed.

84.     Plaintiffs relied upon Defendants' misrepresentations and omissions to their detriment, including as to their purchase, sale and holding of these investments based on the fraudulent and fictitious pricing and valuation practices employed by the Defendants as alleged throughout this Complaint. As a result of the actions of Defendants, Plaintiffs have been damaged.

85.     Defendants are liable to Plaintiffs for their intentional, reckless and/or negligent misrepresentations and omissions under the laws of the State of Alabama.

86.     Plaintiffs are entitled to punitive damages in an amount to be determined by the jury.

**WHEREFORE,** Plaintiffs respectfully request that the Court:

1.     Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.     Award to Plaintiffs reasonable attorney's fees;

3.     Award Plaintiffs a trial by jury, compensatory damages; and

4.     Provide such further legal or equitable relief as the Court deems to be just.

## COUNT V
### Misrepresentation and Suppression/Fraudulent
### Concealment as to True Level of Risk

87.     Plaintiffs incorporate ¶¶ 1-87 by reference.

88.     The Defendants are likewise guilty of misrepresentations and concealments concerning the risk and nature of the Funds which Plaintiffs, at various times, purchased, sold or otherwise held as a result of the Defendants' failure to disclose material facts. While these misrepresentations and concealments involve misstatements as to malfeasance in the Defendants' operations and/or internal affairs, allegations identifying those instances of malfeasance are not intended to make or support derivative claims, but, instead, are set forth to explain the nature of the Defendants' material misrepresentations and concealments of the true risks associated with these RMK Funds. These misrepresentations and concealments of these material facts include without limitation:

(a)     Failure to disclose the true risks of their proprietary securities or the true speculative nature of the securities;

(b)     Failure to disclose the concentration of Funds in the highest-risk, lowest-priority tranches of asset-backed securities and CDOs, CMOs, and CLOs and derivative investments;

(c)     Failure to disclose the investment in the lowest-priority, highest risk tranches of the asset-backed and. mortgage-backed securities carries extraordinary and greater risks than the average interest rate risk, prepayment risk, and credit risk of the underlying assets;

(d)     Failure to disclose that Defendants were not following the investment philosophy set forth in the prospectus;

(e)     Failure to disclose that investors would be exposed to extraordinary credit risk;

(f)      Failure to disclose that investments in low-priority tranches dramatically increase credit risk;

(g)      Failure to disclose that the "credit ratings" reported do not incorporate the risks associated with the low-priority tranches of the CDOs that dominated the RMK portfolios;

(h)      Failure to disclose the imminent risks of default associated with the portfolio assets;

(i)      Failure to accurately report the net asset value of the RMK Funds;

(j)      Failure to accurately identify the portfolio asset allocation;

(k)      Failure to disclose that the RMK Funds were not high-yield bond funds;

(l)      Failure to disclose the smoothing of the RMK Funds' returns by fraudulently smoothing the valuation of its portfolio holdings;

(m)      Failure to disclose that a majority of the assets were illiquid in violation of the Funds' stated limitation on June 30, 2007;

(n)      Failure to disclose that the majority of the Funds' assets were invested in mortgages, in violation of the professed 25% limitation on investment in companies whose principal business activities are in the same industry;

(o)      Failure to disclose that there was no "collateral coverage;"

(p)      Failure to disclose that Regions was propping up the Funds at the same time that Morgan Keegan Wealth Management Division and Regions Trust were divesting their interests in the Funds and removing the Funds from their recommend or approved lists;

(q)      Misrepresentation that the Funds were safe and had less risk that other high yield bond funds;

(r)      Misrepresentation that the Funds had collateral coverage;

(s)     Misrepresentation that the Funds did not have much investment in toxic CDOs and CMOs;

(t)     Misrepresentation that the dividend was a greater indicator of the Funds' value than the NAV;

(u)     Misrepresentation that the Funds' collateral was good and performing;

(v)     Misrepresentation that a planned bonus year-end dividend was a good indicator that the Funds' were stable and not at risk; and

(w)     Misrepresentation that NAV volatility was not indicative of the intrinsic    value of the Fund.

89.     Plaintiffs relied upon Defendants' misrepresentations and omissions to their detriment, including as to their purchase, sale and holding of these investments based on the fraudulent and fictitious pricing and valuation practices employed by the Defendants as alleged throughout this Complaint. As a result of the actions of Defendants, Plaintiffs have been damaged.

90.     Defendants are liable to Plaintiffs for their intentional, reckless and/or negligent misrepresentations and omissions under the laws of the State of Alabama.

91.     Plaintiffs are entitled to punitive damages in an amount to be determined by the jury.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.     Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.     Award to Plaintiffs reasonable attorney's fees;

3.      Award Plaintiffs a trial by jury, compensatory damages; and

4.      Provide such further legal or equitable relief as the Court deems to be just.

## COUNT VI
### Breach of Alabama Securities Act

92.      Plaintiffs incorporate ¶¶ 1-92 by reference.

93.      Based upon the misrepresentations and omissions in connection with: (a) the pricing and valuation of interests in the Funds; and (b) the risk and nature of the Funds, and the solicitation of investments in the Funds which were unsuitable for the Plaintiffs, Defendants are liable to Plaintiffs for breach of the Alabama Securities Act, Alabama Code §§ 8-6-17 and 8-6-19, which has caused great damage to Plaintiffs. The non-issuer Defendants are also liable as control persons of the Funds pursuant to Ala. Code § 8-6-19 (c), and Morgan Keegan is also liable for materially aiding the Alabama Securities Act violation of the other defendants.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.      Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.      Award to Plaintiffs reasonable attorney's fees;

3.      Award Plaintiffs a trial by jury, compensatory damages; and

4.      Provide such further legal or equitable relief as the Court deems to be just.

## COUNT VII
### Conspiracy

94.      Plaintiffs incorporate ¶¶ 1-94 by reference.

95.     Defendants also conspired with one another to lull and deceive investors into continuing to hold their investments by fraudulently concealing the true risks and state of the Funds.

96.     Additionally, the Defendants conspired to fraudulently value and price these securities and cause the Plaintiffs and others to buy and sell holdings in RMK Funds on values that never existed.

97.     Defendants conspired and worked together to commit the above-referenced torts.

98.     As a result of Defendants' conspiracy, Plaintiffs have been greatly damaged.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.      Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.      Award to Plaintiffs reasonable attorney's fees;

3.      Award Plaintiffs a trial by jury, compensatory damages; and

4.      Provide such further legal or equitable relief as the Court deems to be just.

## COUNT VIII
## Breach of Contract

99.     Plaintiffs incorporate ¶¶ 1-99 by reference.

100.    Plaintiffs had contracts with Defendant Morgan Keegan whereby Morgan Keegan agreed to act as financial advisor of the Plaintiffs. Such contract required Morgan Keegan to, among other things, comply with certain rules of fair practice in its dealings with the Plaintiffs.

101.    By the acts described herein, Morgan Keegan breached such contracts.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.    Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.    Award to Plaintiffs reasonable attorney's fees;

3.    Award Plaintiffs a trial by jury, compensatory damages; and

4.    Provide such further legal or equitable relief as the Court deems to be just.

## COUNT IX
### Violation of Section 10 of the Securities and Exchange Act of 1934

102.    Plaintiffs incorporate ¶¶ 1-102 by reference.

103.    Defendants offer and sale of the Funds under the circumstances alleged herein constituted a violation of §10 of the Securities and Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.  The individual defendants are also liable as control persons under § 20 of the Exchange Act.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.    Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for recessionary damages or other appropriate compensatory damages and punitive damages, including prejudgment interest;

2.    Award to Plaintiffs reasonable attorney's fees;

3.    Award Plaintiffs a trial by jury, compensatory damages; and

4.    Provide such further legal or equitable relief as the Court deems to be just.

Respectfully submitted,

_____
J. Timothy Francis
James L. North
Attorneys for Plaintiffs

**OF COUNSEL:**
James L. North & Associates
300 N. Richard Arrington Jr., Blvd.
Title Building, Suite 700
Birmingham, Alabama  35203
Phone:  (205) 251-0252
Fax: (205) 251-0255

## JURY DEMAND

Plaintiffs hereby demand trial by jury.

_____
J. Timothy Francis
Attorney for Plaintiffs